ANA E. TAYPE et al., Respondents, v CITY OF NEW YORK et al., Appellants.

Second Department, September 21, 1981

APPEARANCES OF COUNSEL

*Bower & Gardner (Howard R. Cohen* and *David L. Taback* of counsel), for appellants.

*Lawrence M. Rosenberg* and *Herbert M. Horowitz (J. Irwin Shapiro* and *Robert M. Calica* of counsel), for respondents.

*Per Curiam.*

In this case, plaintiff Ana Taype was admitted to one of the defendants' hospitals for a Cesarean section, the second of such procedures performed upon her, and emerged therefrom a paraplegic. This action was then commenced against defendants and after a lengthy trial a jury verdict was returned in favor of the plaintiffs.

On this appeal, defendants initially contend that there was insufficient evidence as a matter of law to sustain the jury finding of negligence on their part. Defendants further contend that certain remarks made by plaintiffs' counsel during summation were prejudicially improper, since they raised a new claim which was not supported by the evidence.

We first consider the claim that the verdict was against the weight of the evidence. As part of their direct case, the plaintiffs introduced the testimony of two doctors, one a specialist in physical medicine and rehabilitation, and the second a specialist in neurology, who testified that Mrs. Taype's paraplegia was caused by an improper compression, during the said Cesarean section, of either her aorta or the artery that supplies blood to her spinal cord. It was the doctors' further testimony that such compression for even a short period of time could result in the injuries sustained by Mrs. Taype. While admittedly not present during the operation, both doctors opined that this arterial compression resulted from the surgeons' manipulations of both fetus and uterus.

The testimony of a third expert medical witness offered by plaintiffs, who was a specialist in gynecology and obstetrics, was to the effect that the manipulations of the fetus were occasioned by the failure of the hospital to timely commence the operational procedure. During this period of delay occasioned by such failure, Mrs. Taype's labor had reached the point where the fetus had descended a considerable distance into the birth canal, to the extent that the top of the fetus' head was seen externally a period of some 40 minutes before the commencement of the surgical procedure. In the view of the expert, such descent was

far beyond a proper point in those instances where a Cesarean section is anticipated. It was this third medical witness' further opinion that the position of the fetus in the birth canal was such that it had to be pushed back up the birth canal; that such manipulation further compromised the blood flow to the spinal cord, resulting in an infarction of the said cord in the midthoracic area.

In summary, plaintiffs' experts' view was to the effect that the injuries to Mrs. Taype resulted from a compression of the arteries supplying blood to the spinal cord, and this view found some further support in the hospital's own records, in a note containing the impression that Mrs. Taype was suffering from paralysis as a result of the compressing of her spinal cord.

The basis of defendants' contention that the verdict was against the weight of the evidence is founded in the testimony of their own medical experts. These experts, one a specialist in neurology, one in vascular surgery, and one in gynecology and obstetrics, testified that the injuries sustained by Mrs. Taype could not have occurred in the manner envisioned by plaintiffs' experts and was medically impossible. It was their further testimony that the blood vessels said to have been compressed are protected from compression by virtue of their location and structure and further by the sacral promontory which, it was their testimony, provides a natural anatomical barrier between the pelvic and abdominal cavities. Furthermore, the specialists in vascular surgery and obstetrics testified that an individual's aorta can be intentionally clamped during surgery but that such intentional interruption of the blood supply can exist for a substantial period of time without causing injury. It was the conclusion of the medical experts for defendants that the source of Mrs. Taype's injury was either a stroke of the spinal cord, an attack of multiple sclerosis or as a result of some other unknown cause.

In addition, the surgeon who performed the Cesarean section testified that at no time was Mrs. Taype's aorta compressed and that in his opinion the Cesarean section performed was a routine procedure.

We note at the outset that the resolution of conflicting evidence, as well as the credibility of witnesses, is a matter

for the jury to determine, and not the court *(Swensson v New York, Albany Desp. Co.,* 309 NY 497; *Talay v Del Vicario,* 74 AD2d 601; *Sorokin v Food Fair Stores,* 51 AD2d 592, 593). The plaintiffs are entitled to the benefit of every favorable inference which can reasonably be drawn from the facts *(Swensson v New York, Albany Desp. Co., supra),* and the finding of the jury may be disturbed only if it may be said that the preponderance of the evidence in this case was so great that the jury could not have reached the verdict it did on any fair interpretation of such evidence *(Lee v Lesniak,* 40 AD2d 756).

■ In our view the evidence presented a sharp issue of fact. The jury had to determine whether Mrs. Taype's injury was caused by a negligent interference with the blood supply to her spinal cord or whether it was the result of any other source. We cannot say as a matter of law that the evidence as presented so preponderated against the plaintiffs' version as adduced from the witnesses that the verdict was against the weight of the evidence.

Defendants' second contention is that certain remarks made by plaintiffs' counsel in his closing statement were highly prejudicial and mandate reversal. In summation plaintiffs' counsel stated that it was his "theory" that the doctors performing the Cesarean had intentionally compressed the artery supplying blood to the area in question in order to stop Mrs. Taype from hemorrhaging and in order to provide a clean operational field. Timely objections were taken to these remarks, it being argued that such remarks interjected a new claim into the case, which claim had no foundation in the evidence. It was ruled by the trial court that the remarks in question were fair comment and that since Mrs. Taype was unconscious at the time of the operation, she could not know exactly what occurred; as a result, the court ruled that she was entitled to argue any theory consistent with the proof offered at trial.

■ While defendants' second contention is substantial in nature, we conclude that the ruling by the trial court that the remarks in question were fair comment upon the evidence was correct under the circumstances presented in this case. Testimony was presented that the surgical procedure was improperly delayed for a matter of hours by

defendants' servants and, as testified to by defendants' own witnesses, that each step in a second Cesarean procedure should take longer than the corresponding step in the initial Cesarean procedure. In the second operational procedure involving Mrs. Taype, however, the infant was delivered only 13 minutes after commencement of the operation, whereas in the first Cesarean section performed upon her, the infant had been delivered 18 minutes after commencement of the operation. From these facts, it could fairly be inferred by the jury that the early part of the second procedure was performed with untoward haste. Evidence was also adduced that during the 13 minutes after the commencement of the second procedure Mrs. Taype sustained a four centimeter tear in her uterus. Plaintiffs' expert in obstetrics testified that such a tear should engender considerable bleeding. However, evidence of Mrs. Taype's blood loss during this procedure demonstrated that such blood loss was below what is normal for such type of surgery. It could be reasonably inferred from such evidence that action was taken in the initial stages of surgery to restrict blood loss and such inference has support in the testimony of defendants' expert in obstetrics, who stated that the only way to cause an injury of the type that resulted in this case is to restrict the blood supply; and that in certain life-threatening situations it is proper to clamp the aorta in order to prevent hemorrhaging in the pelvic area and to provide a clean surgical field. It should be noted further that the issue of intentional clamping of the aorta as being a *possible* causative factor of the restricting of blood flow and any resultant injury was addressed by the defendants' counsel both in his cross-examination of one of the plaintiffs' expert witnesses and in the direct examination of his own experts.

In view of the testimonial proof alluded to and the inferences that flow therefrom, we determine that defendants' contention that plaintiffs' counsel's remarks were prejudicial does not warrant reversal. While plaintiffs' expert witnesses were of the opinion that Mrs. Taype's injuries resulted from an unintentional compression, and while plaintiffs' counsel in summation argued the theory of an intentional clamping, we do not believe that Mrs.

Taype, who was unconscious during the operation and could not testify as to how or whether her artery was compressed, should be precluded from relying upon any theory of negligence that could be reasonably inferred from the evidence (see *Gustavson v Southern Blvd. R.R. Co.,* 292 NY 309).

Accordingly, we affirm.

GIBBONS, J.P., GULOTTA, COHALAN and BRACKEN, JJ., concur.

Judgment of the Supreme Court, Queens County, entered July 23, 1980, affirmed, with costs.