CORRIE COLLINS, Respondent-Appellant, v PAUL J. McGINLEY, SR., et al., Appellants-Respondents.

Third Department, July 5, 1990

### APPEARANCES OF COUNSEL

*Thomas J. Leyden (James M. McLaughlin, Jr.,* of counsel), for respondent-appellant.

*Lambert & Weiss (Arthur N. Lambert* and *Robin Davidson* of counsel), for appellants-respondents.

### OPINION OF THE COURT

YESAWICH, JR., J.

In 1981, plaintiff was a passenger in a vehicle operated by defendant Matthew G. McGinley (hereinafter defendant)

and owned by his father, defendant Paul J. McGinley, which failed to stop, as required, before entering an intersection, thereby colliding with a vehicle approaching from the right. Following the collision, plaintiff was taken to the emergency room of a local hospital and treated for cuts, bumps and bruises. At a subsequent bifurcated trial, the jury apportioned liability 90% to defendant and 10% to plaintiff, apparently because there was evidence that she distracted defendant just prior to the accident. The record provides the requisite evidence to sustain the jury's allocation of liability; accordingly, this portion of the judgment is affirmed.

The thrust of this appeal, however, is directed to the questions of the proper amount of damages and whether, as a matter of law, plaintiff sustained a "serious injury" (Insurance Law § 5102 [d]; see, Locatelli v Blanchard, 108 AD2d 1032, 1033). At trial, plaintiff testified that the morning following the accident she awoke with eyes swollen shut and a rash on her face and neck, both of which were also very swollen. Later that day, an orthopedic surgeon prescribed Valium and instructed her to wear a neck brace. Despite this treatment, plaintiff's pain persisted and increased. Moreover, her vision began to blur, her ears started to ring, a numbing sensation spread through her left limbs and the rash continued to spread. Three weeks after the accident plaintiff visited a neurologist because she had begun to experience headaches and joint pain. The headaches and stiffness continued through the spring of 1982 and plaintiff developed other symptoms including pain in her jaw, stomach aches, muscle cramps, laryngitis, bladder infections and a reoccurrence of the rash.

During this time, plaintiff returned to high school but her medical complaints interfered with both her attendance and performance such that she did not graduate with the other members of her class. Additionally, she was unable to continue roller skating, horseback riding and swimming, all activities she enjoyed prior to the accident.

Plaintiff's pain and discomfort continued, and in the summer of 1984 she came under the care of Dr. Howard Blank, a board-certified rheumatologist. In 1986, plaintiff was diagnosed for the first time as suffering from a mild case of systemic lupus erythematosas (hereinafter lupus), a disease involving an abnormality in the immune system. At trial, plaintiff contended that the 1981 car accident precipitated a previously quiescent lupus condition which resulted in the ensuing pain and discomfort. Dr. Blank supported the causal connection.

While defendant's medical witness acknowledged the possibility that plaintiff has lupus, he substantially disagreed with Dr. Blank's conclusion that the accident precipitated the injury. The jury, however, credited Dr. Blank's testimony and awarded plaintiff damages totaling $900,000.

Subsequently, Supreme Court entered an order setting aside the verdict as excessive unless plaintiff stipulated to reduce the award by $300,000, the amount representing an award for loss of enjoyment of life as distinct from damages for pain and suffering (see, McDougald v Garber, 73 NY2d 246, 257). Not only do we agree with the court's conclusion that it was error to instruct the jury to consider these damages independently, in our view the verdict must be reduced even further. Plaintiff's bill of particulars set forth a claim for lost earnings; it alleged that plaintiff lost her job after the accident "[a]s she was often too sick to work" and that she "has not recovered and does not expect to recover sufficiently to be gainfully employed". At trial, however, no medical testimony was produced to establish these contentions, nor was any evidence produced regarding the amount of the loss of anticipated future income. Accordingly, there is no evidence in the record to support the jury awards of $100,000 and $200,000 for past and future lost earnings, respectively.

The award for pain and suffering, however, is not inappropriate. Dr. Blank testified that plaintiff suffers from lupus but that hers is a mild case, that is, there is no vital organ involvement. And, although it is clear that as much is known about lupus, an unpredictable chronic condition, as that which is unknown, in most ways plaintiff seems to lead a comparatively "normal" life.

We are unamenable to defendant's contention that plaintiff failed to make a prima facie showing that she suffered a "permanent loss of use of a * * * function or system" (Insurance Law § 5102 [d]). Dr. Blank testified that as a result of the accident, plaintiff's quiescent lupus became symptomatic. Plaintiff documented the pain and discomfort she continues to experience which symptoms are, according to Dr. Blank, ongoing and directly attributable to this disease. When he evaluated her condition he found her to be in "relative remission", in that while her symptoms were not severe and the rash typically associated with lupus was then inactive, she continued to have "some joint aches and pains". In his opinion, from the time he saw plaintiff in 1984 until the time of trial she was not in remission, that throughout she had joint aches and

pains at various intervals between visits with the doctor. Defendant's medical expert did not dispute that plaintiff was suffering from this illness, but only that the accident caused the dormant state to activate. He also suggested, contrary to Dr. Blank's testimony, that plaintiff's lupus was currently in remission. The jury was free to credit plaintiff's proof and discredit defendant's (see, Taype v City of New York, 82 AD2d 648, 650-651, lv denied 55 NY2d 608).

■ Lastly, we do not interpret Supreme Court's charge that the jury could not find permanency unless it concluded that "the recurrence after remission [was] causally related to [the] accident" because Dr. Blank's testimony, that recurrence after remission was not related to the accident, foreclosed any such finding. The immediately preceding instructions to the jury indicate that the court intended the term "recurrence" to refer to the initial activation of the disease from its previously quiescent state.

KANE, J. P. (dissenting). In our view, plaintiff failed to demonstrate that she sustained a "serious injury", as defined by Insurance Law § 5102 (d), which is attributable to the accident of June 25, 1981. The question of "serious injury" was submitted to the jury as a request for a special finding in the following form: "Did the plaintiff, as a result of the accident, suffer a permanent limitation of use of body functions?" Earlier in its charge, Supreme Court informed the jury that in order for plaintiff to recover, she must prove the existence of a "serious injury" as a result of the accident, and that in order to do so the jury must first consider:

"Has the plaintiff, as a result of the accident involved in the case, permanently lost the use of body function? It is not necessary for you to find total loss of the use of body functions. It is sufficient if you find that the functions no longer operate at all or operate in some limited way or operate only with pain.

"If you find there has been a loss and also that the loss is permanent, you must answer the question 'yes'."

The court also directed the jury that "[f]or permanency you must find the recurrence after remission is causally related to that accident".

Plaintiff's theory of recovery is that the accident of June 25, 1981 "aggravated" a quiescent lupus erythematosas condition, causing her suffering and disability. However, her attending expert rheumatologist, Dr. Howard Blank, upon inquiry by

Supreme Court, testified that in his opinion the accident "brought out" the previously quiescent condition. Thereupon, the court inquired further in regard to the question of remission and recurrence and asked specifically, "Would that accident be responsible for a recurrence a couple, three, four, five, six years later?" to which Dr. Blank responded, "No. Not in a medical sense, no."

Thus, two troublesome questions are presented. First, in the case of an underlying, unusual disease such as lupus, is there a recognizable distinction between an "aggravation" of a preexisting condition and the manifestation of an underlying disease which may be "brought out" by a number of circumstances, such as, exposure to rays of the sun, pregnancy or emotional stress? Second, if the presence of a condition which causes an alleged "loss of use of body functions" periodically enters a period of remission, can there be a finding of permanency within the contemplation of Insurance Law § 5102 (d) as a matter of law? We would answer "yes" to the first question and "no" to the second.

The word "aggravation" suggests an enhancement or intensification of a known preexisting condition. Here, however, there is an underlying disease which, apparently, will manifest itself from a number of precipitating causes, may often disappear, and then may or may not reappear. It is, in this instance, more than a mere question of semantics, for there is no medical proof that plaintiff's accident made her alleged lupus any worse than it would have been from any other precipitating cause, and thus there could not be an "aggravation" of a preexisting condition found by the jury and charged by the court.

Although plaintiff's subjective complaints of pain and distress are set forth at length in the record, the medical evidence does not support her contentions, particularly as to permanency. Her own expert, without reviewing the extensive medical records available to him during his first examination of plaintiff on December 11, 1984, and based upon his findings and laboratory tests performed *at that time,* ultimately concluded that she had a mild case of systemic lupus erythematosas, which did not require any treatment. Significantly, the expert, Dr. Blank, opined that "at the time of my evaluation then [plaintiff] was in what one would call a remission". This conclusion was supported by testimony from defendant's expert, Dr. Allen Radin, who stated that it was impossible to diagnose plaintiff as having lupus after 1984 "[b]ecause her

symptoms resolved". Moreover, throughout a seven-year period, plaintiff relied mainly on Tylenol to relieve her subjective discomfort, and there was no medical testimony that any of the test results during this period indicated nerve damage or muscle damage to support or explain her symptoms. Consequently, in our view, Dr. Blank's opinion as to causation is essentially an exercise in speculation and does not rise to the level of credible medical evidence required to support a claim of "permanency" occasioned by the accident of June 25, 1981 *(see, McLiverty v Urban,* 131 AD2d 449, 450; *Dwyer v Tracey,* 105 AD2d 476, 477-478).

Finally, Supreme Court charged the jury that to find "permanency" they must find that "the recurrence after remission is causally related to the accident". Plaintiff's own expert testified that recurrence after remission was *not* related to the accident. Thus, in view of this testimony, the jury was foreclosed from finding permanency.

Accordingly, since plaintiff had the burden of proving that she suffered a "serious injury" as contemplated by the requirements of Insurance Law § 5102 (d), we would, as a matter of law, reverse the judgment appealed from and dismiss the complaint.

WEISS and MIKOLL, JJ., concur with YESAWICH, JR., J.; KANE, J. P., and HARVEY, J., dissent and vote to reverse in an opinion by KANE, J. P.

Judgment and order reversed, on the law and the facts, and a new trial granted on the issue of damages, unless plaintiff stipulates to vacate the award for loss of earnings and loss of future earnings, in which event, the judgment and order, as so reduced, are affirmed, without costs.