■ Hector Lopez, Appellant, v Consolidated Edison Company of New York, Inc., et al., Respondents. [835 NYS2d 115]—

Order and judgment (one paper), Supreme Court, Bronx County (Kenneth L. Thompson, Jr., J.), entered January 9, 2006, which granted defendants' motion to set aside the verdict and directed a new trial on damages and liability, unanimously reversed, on the law, without costs, the motion denied and the verdict reinstated. The Clerk is directed to enter judgment in accordance with the verdict.

This action for personal injury arose out of a collision between a van occupied by plaintiff and a Consolidated Edison truck occupied by defendant Michael S. Sealy and his passenger, Anthony Whitaker. At trial, conducted in June 2005, plaintiff testified that on the night of the accident he was driving south on Ninth Avenue in Manhattan, which consists of four southbound traffic lanes. While he was stopped at a traffic signal at West 17th Street, a police vehicle, with an emergency light and siren on, went through the intersection against the red light. When the traffic light turned green, plaintiff proceeded into the intersection where the front of his van struck the Consolidated Edison truck just behind the passenger-side door. Plaintiff described defendants' vehicle as "like a big potato chip truck."

Defendant Michael Sealy testified that he was driving a heavy "cube truck" heading westbound on 17th Street between 8:30 and 9:00 p.m. on September 27, 2001. The weather was clear and the roads were dry. His was the only vehicle approaching Ninth Avenue, and the traffic signal was green as he proceeded into the intersection traveling at about 25 miles an hour. Due to the passage of time, he could not recall if he saw plaintiff's vehicle until just before the moment of impact.

Sealy's passenger, Anthony Whitaker, testified that he recalled "vividly" that the light at Ninth Avenue was red as they crossed Eighth Avenue and that the light turned green at least 100 to 200 feet before they reached the Ninth Avenue intersection.

Whitaker remembered seeing cars on Ninth Avenue stopped for the light but was not aware of plaintiff's vehicle until it struck the truck in the vicinity of his door.

A pedestrian, Janet Rose, was standing with her granddaughter on the northwest corner of the intersection, waiting to cross Ninth Avenue. She missed the first opportunity to cross the avenue because an unmarked police car with a bubble light on the roof went through the intersection against the light, by which time the pedestrian crosswalk signal was flashing red. She testified that her attention was attracted when plaintiff's vehicle, which she described as "a dark car, suddenly left all the other cars and came out very quick," and struck the Consolidated Edison truck. However, she was watching only the crosswalk signal, not the traffic light.

Plaintiff sustained injury to his right knee as a result of the accident. The jury awarded him $66,250 for past pain and suffering, $348,750 for future pain and suffering and $64,000 for lost earnings, for a total of $479,000, apportioning fault 100% against defendants. Defendants moved to set aside the verdict on the ground that it was against the weight of the evidence (CPLR 4404 [a]), contending that certain medical testimony was based on an MRI not received into evidence and that the verdict was excessive. They further argued that the testimony of Ms. Rose indicated that plaintiff proceeded against a red signal and that plaintiff conceded that he failed to look to see if there was traffic in the intersection.

Supreme Court granted the motion, concluding that the eyewitness "clearly established that plaintiff was also equally negligent for this intersection accident." The court further concluded that the verdict was excessive and directed a new trial unless plaintiff stipulated to an apportionment of liability of 40% and a reduction in damages for future pain and suffering to $215,000.

On appeal, defendants contend that "plaintiff was negligent as a matter of law." They argue that no fair interpretaion of the evidence would permit the conclusion that defendants were wholly responsible for the accident.

The proof adduced at trial confronted the jury with the purely factual question of whether plaintiff's vehicle, defendants' vehicle or both were driven into an intersection against a red traffic signal. Plaintiff stated that he moved his vehicle away from the stop line only after the light turned green. The testimony of the eyewitness merely established that plaintiff proceeded across the intersection ahead of other vehicles stopped at the traffic signal; it did not establish that plaintiff proceeded against a red

light. In addition, defendant Sealy's testimony was contradicted by his earlier statements, read into the record. During his examination before trial, Sealy had conceded that he saw plaintiff's van stopped at the light and observed the van approaching his truck in sufficient time to warn his passenger to get up prior to the collision. Moreover, Sealy had previously responded affirmatively when asked if he was "traveling too fast, considering the weight and size of [his] vehicle to stop before the accident." Thus, there was evidence from which the jury could conclude that plaintiff properly advanced into the intersection on a green traffic signal and that Sealy had both entered the intersection against a red signal and observed the approach of plaintiff's vehicle but was traveling too fast to be able to control his truck and avoid the collision.

The testimony of the pedestrian eyewitness was equivocal. Neither party was able to elicit a definitive explanation from her concerning the state of the traffic signal and the entry of plaintiff's vehicle into the intersection because her attention was directed only at the crosswalk signal. Her testimony that "every lane [on Ninth Avenue] was filled with cars stopped" was inconsistent with the testimony of both plaintiff and Whitaker. Thus, any inference to be drawn from her testimony was for the trier of fact (*see Hemingway Bros. Interstate Trucking Co. v McLeod*, 22 AD2d 299, 303 [1964]). Plaintiff must be accorded "the benefit of every favorable inference which can reasonably be drawn from the facts, and the finding of the jury may be disturbed only if it may be said that the preponderance of the evidence in this case was so great that the jury could not have reached the verdict it did on any fair interpretation of such evidence" (*Taype v City of New York*, 82 AD2d 648, 651 [1981], *lv denied* 55 NY2d 608 [1982] [citations omitted]).

As to damages, we do not find the jury's award to deviate materially from what would be reasonable compensation for plaintiff's injuries (CPLR 5501 [c]; *cf. Calzado v New York City Tr. Auth.*, 304 AD2d 385, 386 [2003] [torn medial meniscus and anterior cruciate ligament]; *Garcia v Queens Surface Corp.*, 271 AD2d 277, 278 [2000] [torn medial meniscus and degenerative arthritis]). We note that plaintiff sustained not one but two meniscus tears and chondromalacia in his knee.

Finally, the unrebutted testimony of plaintiff's orthopedist was not wholly dependent on the MRI not received into evidence (*cf. Murphy v Columbia Univ.*, 4 AD3d 200, 203 [2004] [MRI was primary basis for physician's diagnosis]). The doctor performed his own examination of plaintiff and reviewed the operative report of the arthroscopic surgery, which corrected

and elaborated upon the preoperative diagnosis of a medial meniscus tear (see *Woods v Tomayo*, 5 AD3d 309, 310 [2004]), concluding that plaintiff had sustained a "flap tear of the medial meniscus, flap tear of the posterior horn and body of the medial meniscus, and chondromalacia of the internal femoral condyle." Concur—Tom, J.P., Andrias, Friedman, Catterson and Kavanagh, JJ.