OPINION OF THE COURT
Chief Judge Wachtler.
This appeal raises fundamental questions about the nature and role of nonpecuniary damages in personal injury litigation. By nonpecuniary damages, we mean those damages awarded to compensate an injured person for the physical and emotional consequences of the injury, such as pain and suffering and the loss of the ability to engage in certain activities. Pecuniary damages, on the other hand, compensate the victim for the economic consequences of the injury, such as medical expenses, lost earnings and the cost of custodial care.
 The specific questions raised here deal with the assessment of nonpecuniary damages and are (1) whether some degree of cognitive awareness is a prerequisite to recovery for loss of enjoyment of life and (2) whether a jury should be instructed to consider and award damages for loss of enjoyment of life separately from damages for pain and suffering. We answer the first question in the affirmative and the second question in the negative.
I.
On September 7, 1978, plaintiff Emma McDougald, then 31 years old, underwent a Caesarean section and tubal ligation at New York Infirmary. Defendant Garber performed the surgery; defendants Armengol and Kulkarni provided anesthesia. During the surgery, Mrs. McDougald suffered oxygen deprivation which resulted in severe brain damage and left her in a permanent comatose condition. This action was brought by Mrs. McDougald and her husband, suing derivatively, alleging that the injuries were caused by the defendants’ acts of malpractice.
A jury found all defendants liable and awarded Emma Mc-Dougald a total of $9,650,102 in damages, including $1,000,000 for conscious pain and suffering and a separate award of *252 $3,500,000 for loss of the pleasures and pursuits of life. The balance of the damages awarded to her were for pecuniary damages — lost earnings and the cost of custodial and nursing care. Her husband was awarded $1,500,000 on his derivative claim for the loss of his wife’s services. On defendants’ post-trial motions, the Trial Judge reduced the total award to Emma McDougald to $4,796,728 by striking the entire award for future nursing care ($2,353,374) and by reducing the separate awards for conscious pain and suffering and loss of the pleasures and pursuits of life to a single award of $2,000,000 (McDougald v Garber, 132 Misc 2d 457). Her husband’s award was left intact. On cross appeals, the Appellate Division affirmed (135 AD2d 80) and later granted defendants leave to appeal to this court.
II.
We note at the outset that the defendants’ liability for Emma McDougald’s injuries is unchallenged here, except for a claim by Dr. Garber that liability against her was predicated on a theory not asserted in the complaint or bill of particulars. We agree with the Appellate Division, for the reasons stated by that court (see, 135 AD2d 80, 95-96, supra), that Dr. Garber’s claim does not warrant a new trial on liability.
Also unchallenged are the awards in the amount of $770,978 for loss of earnings and $2,025,750 for future custodial care— that is, the pecuniary damage awards that survived defendants’ posttrial motions.
What remains in dispute, primarily, is the award to Emma McDougald for nonpecuniary damages. At trial, defendants sought to show that Mrs. McDougald’s injuries were so severe that she was incapable of either experiencing pain or appreciating her condition. Plaintiffs, on the other hand, introduced proof that Mrs. McDougald responded to certain stimuli to a sufficient extent to indicate that she was aware of her circumstances. Thus, the extent of Mrs. McDougald’s cognitive abilities, if any, was sharply disputed.
The parties and the trial court agreed that Mrs. McDougald could not recover for pain and suffering unless she were conscious of the pain. Defendants maintained that such consciousness was also required to support an award for loss of enjoyment of life. The court, however, accepted plaintiffs’ view that loss of enjoyment of life was compensable without regard to whether the plaintiff was aware of the loss. Accordingly, *253 because the level of Mrs. McDougald’s cognitive abilities was in dispute, the court instructed the jury to consider loss of enjoyment of life as an element of nonpecuniary damages separate from pain and suffering. The court’s charge to the jury on these points was as follows:
"If you conclude that Emma McDougald is so neurologically impaired that she is totally incapable of experiencing any unpleasant or painful sensation, then, obviously, she cannot be awarded damages for conscious pain * * *.
"It is for you to determine the level of Emma McDougald’s perception and awareness. Suffering relates primarily to the emotional reaction of the injured person to the injury. Thus, for an injured person to experience suffering, there, again, must be some level of awareness. If Emma McDougald is totally unaware of her condition or totally incapable of any emotional reaction, then you cannot award her damages for suffering. If, however, you conclude that there is some level of perception or that she is capable of an emotional response at some level, then damages for pain and suffering should be awarded * * *.
"Damages for the loss of the pleasures and pursuits of life, however, require no awareness of the loss on the part of the injured person. Quite obviously, Emma McDougald is unable to engage in any of the activities which constitute a normal life, the activities she engaged in prior to her injury * * * Loss of the enjoyment of life may, of course, accompany the physical sensation and emotional responses that we refer to as pain and suffering, and in most cases it does. It is possible, however, for an injured person to lose the enjoyment of life without experiencing any conscious pain and suffering. Damages for this item of injury relate not to what Emma McDougald is aware of, but rather to what she has lost. What her life was prior to her injury and what it has been since September 7, 1978 and what it will be for as long as she lives.”
We conclude that the court erred, both in instructing the jury that Mrs. McDougald’s awareness was irrelevant to their consideration of damages for loss of enjoyment of life and in directing the jury to consider that aspect of damages separately from pain and suffering.
III.
We begin with the familiar proposition that an award of damages to a person injured by the negligence of another is to *254 compensate the victim, not to punish the wrongdoer (see, Sharapata v Town of Islip, 56 NY2d 332, 335; Prosser and Keeton, Torts, at 7 [5th ed]). The goal is to restore the injured party, to the extent possible, to the position that would have been occupied had the wrong not occurred (1 Minzer, Nates, Kimball, Axelrod & Goldstein, Damages in Tort Actions §§ 1.00, 1.02). To be sure, placing the burden of compensation on the negligent party also serves as a deterrent, but purely punitive damages — that is, those which have no compensatory purpose — are prohibited unless the harmful conduct is intentional, malicious, outrageous, or otherwise aggravated beyond mere negligence (see, Sharapata v Town of Islip, supra, at 335; Prosser and Keeton, Torts, at 9-10 [5th ed]; 1 Minzer, op. cit., § 1.03).
Damages for nonpecuniary losses are, of course, among those that can be awarded as compensation to the victim. This aspect of damages, however, stands on less certain ground than does an award for pecuniary damages. An economic loss can be compensated in kind by an economic gain; but recovery for noneconomic losses such as pain and suffering and loss of enjoyment of life rests on "the legal fiction that money damages can compensate for a victim’s injury” (Howard v Lecher, 42 NY2d 109, 111). We accept this fiction, knowing that although money will neither ease the pain nor restore the victim’s abilities, this device is as close as the law can come in its effort to right the wrong. We have no hope of evaluating what has been lost, but a monetary award may provide a measure of solace for the condition created (see, Skelton v Collins, 115 CLR 94, 130, 39 ALJR 480, 495 [Austl H C]).
Our willingness to indulge this fiction comes to an end, however, when it ceases to serve the compensatory goals of tort recovery. When that limit is met, further indulgence can only result in assessing damages that are punitive. The question posed by this case, then, is whether an award of damages for loss of enjoyment of life to a person whose injuries preclude any awareness of the loss serves a compensatory purpose. We conclude that it does not.
Simply put, an award of money damages in such circumstances has no meaning or utility to the injured person. An award for the loss of enjoyment of life "cannot provide [such a victim] with any consolation or ease any burden resting on him * * * He cannot spend it upon necessities or pleasures. He cannot experience the pleasure of giving it away” (Flan *255 nery v United States, 718 F2d 108, 111, cert denied 467 US 1226).
We recognize that, as the trial court noted, requiring some cognitive awareness as a prerequisite to recovery for loss of enjoyment of life will result in some cases "in the paradoxical situation that the greater the degree of brain injury inflicted by a negligent defendant, the smaller the award the plaintiff can recover in general damages” (McDougald v Garber, 132 Misc 2d 457, 460, supra). The force of this argument, however —the temptation to achieve a balance between injury and damages — has nothing to do with meaningful compensation for the victim. Instead, the temptation is rooted in a desire to punish the defendant in proportion to the harm inflicted. However relevant such retributive symmetry may be in the criminal law, it has no place in the law of civil damages, at least in the absence of culpability beyond mere negligence.
 Accordingly, we conclude that cognitive awareness is a prerequisite to recovery for loss of enjoyment of life. We do not go so far, however, as to require the fact finder to sort out varying degrees of cognition and determine at what level a particular deprivation can be fully appreciated. With respect to pain and suffering, the trial court charged simply that there must be "some level of awareness” in order for plaintiff to recover. We think that this is an appropriate standard for all aspects of nonpecuniary loss. No doubt the standard ignores analytically relevant levels of cognition, but we resist the desire for analytical purity in favor of simplicity. A more complex instruction might give the appearance of greater precision but, given the limits of our understanding of the human mind, it would in reality lead only to greater speculation.
We turn next to the question whether loss of enjoyment of life should be considered a category of damages separate from pain and suffering.
IV.
There is no dispute here that the fact finder may, in assessing nonpecuniary damages, consider the effect of the injuries on the plaintiff’s capacity to lead a normal life. Traditionally, in this State and elsewhere, this aspect of suffering has not been treated as a separate category of damages; instead, the plaintiff’s inability to enjoy life to its fullest has been considered one type of suffering to be factored *256 into a general award for nonpecuniary damages, commonly known as pain and suffering.
Recently, however, there has been an attempt to segregate the suffering associated with physical pain from the mental anguish that stems from the inability to engage in certain activities, and to have juries provide a separate award for each (see generally, Annotation, Damages Element-Loss of Enjoyment of Life, 34 ALR4th 293; Comment, Loss of Enjoyment of Life as a Separate Element of Damages, 12 Pac LJ 965 [1981]; Hermes, Loss of Enjoyment of Life — Duplication of Damages Versus Full Compensation, 63 North Dakota L Rev 561 [1987]).
Some courts have resisted the effort, primarily on the ground that duplicative and therefore excessive awards would result (see, e.g., Huff v Tracy, 57 Cal App 3d 939, 944, 129 Cal Rptr 551, 553; Poyzer v McGraw, 360 NW2d 748, 752-753 [Iowa]). Other courts have allowed separate awards, noting that the types of suffering involved are analytically distinguishable (see, e.g., Rufino v United States, 829 F2d 354 [applying its prediction of New York law]; Thompson v National R. R. Passenger Corp., 621 F2d 814, cert denied 449 US 1035; Mariner v Marsden, 610 P2d 6 [Wyo]; Lebesco v Southeastern Pa. Transp. Auth., 251 Pa Super 415, 380 A2d 848). Still other courts have questioned the propriety of the practice but held that, in the particular case, separate awards did not constitute reversible error (see, e.g., Swiler v Baker’s Super Mkt., 203 Neb 183, 277 NW2d 697; Pierce v New York Cent. R. R. Co., 409 F2d 1392, 1398-1399).
In this State, the only appellate decisions to address the question are the decision of the Appellate Division, First Department, now under review (135 AD2d 80, supra), and the decision of the Second Department in Nussbaum v Gibstein (138 AD2d 193, revd 73 NY2d 912 [decided today]). Those courts were persuaded that the distinctions between the two types of mental anguish justified separate awards and that the potential for duplicative awards could be mitigated by carefully drafted jury instructions. In addition, the courts opined that separate awards would facilitate appellate review concerning the excessiveness of the total damage award.
We do not dispute that distinctions can be found or created between the concepts of pain and suffering and loss of enjoyment of life. If the term "suffering” is limited to the emotional response to the sensation of pain, then the emotional response *257 caused by the limitation of life’s activities may be considered qualitatively different (see, Comment, Loss of Enjoyment of Life as a Separate Element of Damages, 12 Pac LJ 965, 969-973). But suffering need not be so limited — it can easily encompass the frustration and anguish caused by the inability to participate in activities that once brought pleasure. Traditionally, by treating loss of enjoyment of life as a permissible factor in assessing pain and suffering, courts have given the term this broad meaning.
If we are to depart from this traditional approach and approve a separate award for loss of enjoyment of life, it must be on the basis that such an approach will yield a more accurate evaluation of the compensation due to the plaintiff. We have no doubt that, in general, the total award for nonpecuniary damages would increase if we adopted the rule. That separate awards are advocated by plaintiffs and resisted by defendants is sufficient evidence that larger awards are at stake here. But a larger award does not by itself indicate that the goal of compensation has been better served.
The advocates of separate awards contend that because pain and suffering and loss of enjoyment of life can be distinguished, they must be treated separately if the plaintiff is to be compensated fully for each distinct injury suffered. We disagree. Such an analytical approach may have its place when the subject is pecuniary damages, which can be calculated with some precision. But the estimation of nonpecuniary damages is not amenable to such analytical precision and may, in fact, suffer from its application. Translating human suffering into dollars and cents involves no mathematical formula; it rests, as we have said, on a legal fiction. The figure that emerges is unavoidably distorted by the translation. Application of this murky process to the component parts of nonpecuniary injuries (however analytically distinguishable they may be) cannot make it more accurate. If anything, the distortion will be amplified by repetition.
Thus, we are not persuaded that any salutary purpose would be served by having the jury make separate awards for pain and suffering and loss of enjoyment of life. We are confident, furthermore, that the trial advocate’s art is a sufficient guarantee that none of the plaintiff’s losses will be ignored by the jury.
The errors in the instructions given to the jury require a new trial on the issue of nonpecuniary damages to be awarded *258 to plaintiff Emma McDougald. Defendants’ remaining contentions are either without merit, beyond the scope of our review or are rendered academic by our disposition of the case.*
Accordingly, the order of the Appellate Division, insofar as appealed from, should be modified, with costs to defendants, by granting a new trial on the issue of nonpecuniary damages of plaintiff Emma McDougald, and as so modified, affirmed.

 We note especially the argument raised by several defendants that plaintiffs’ attorney was precluded by CPLR 3017 (c) from mentioning, in his summation, specific dollar amounts that could be awarded for nonpecuniary damages. We do not resolve this issue, which has divided the lower courts (compare, Bagailuk v Weiss, 110 AD2d 284; and Bechard v Eisinger, 105 AD2d 939, with Braun v Ahmed, 127 AD2d 418), inasmuch as the matter was neither presented to nor addressed by the Appellate Division.