Adrianne M. ROUNDS, Plaintiff,

v.

RUSH TRUCKING CORPORATION, Defendant.

No. 95–CV–497S(F).

United States District Court, W.D. New York.

June 17, 1999.

Ballow, Braisted, O'Brien & Rusin, P.C., F. David Rusin, of counsel, Williamsville, NY, for Plaintiff.

Saperston & Day, P.C., Kenneth A. Krajewski and Peter L. Powers, of counsel, Buffalo, NY, for Defendant.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

The parties to this matter consented to proceed before the undersigned on No-

vember 27, 1995. The matter is presently before the court on Defendant's motion for a new trial or to strike the past and future damages award and reduce the remaining damages, filed January 29, 1999 (Docket Item No. 56).

### BACKGROUND and FACTS

Plaintiff, Adrianne M. Rounds, commenced this personal injury action on June 21, 1995, alleging that she was injured on January 21, 1994 when her pickup truck, while stopped at a traffic light, was struck in the rear when a tractor-trailer belonging to Defendant, Rush Trucking Corporation, failed to stop, driving Plaintiff's truck through the intersection.[1] Jurisdiction was based on diversity. That the accident was caused by Defendant's negligence was conceded prior to trial although Defendant disputed both that Plaintiff's injuries resulted from the accident as well as the severity of such injuries.

The jury was selected on November 2, 1998 and testimony commenced on November 3, 1998. Extensive testimony was presented as to Plaintiff's injuries including that she sustained injuries to her cervical and lumbar spine and suffered from temporomandibular joint ("TMJ") dysfunction.

Lynn Pownall, D.C, D.A.C.N.B., testified as Plaintiff's treating chiropractor and as an expert in the field of chiropractic neurology. According to Dr. Pownall, Plaintiff sustained several herniated discs with nerve root involvement, bulging discs, and a floating disc fragment. Plaintiff also suffered from a curvature of her cervical spine and some loss of mobility of the spine. X-rays and MRI films of Plaintiff's spine were submitted in support of Dr. Pownall's testimony. Dr. Pownall connected these objective findings to Plaintiff's pain, numbness, tingling and burning sensation which extended to her leg and lower back. It was Dr. Pownall's opinion that Plaintiff's pain is permanent. Dr. Pownall

also testified as to three distinct types of headaches suffered by Plaintiff, including migraines which were accompanied by blurred vision, photophobia (painful sensitivity to light), nausea and vomiting.

Robert S. Kull, D.D.S., M.S., who testified on Plaintiff's behalf, corroborated Dr. Pownall's testimony as to Plaintiff's TMJ dysfunction and described findings of acute facial pain including significant myofascial pain in the mastication muscles. It was Dr. Kull's opinion that such injuries were permanent. Dr. Kull also gave testimony consistent with Dr. Pownall that Plaintiff had suffered a Grade 1 disc displacement and flattened cervical curvature.

Plaintiff testified as to the significant impact her injuries have had on her lifestyle including the fact that since the accident, she has not been able to return to her job as a pediatric nurse and that her attempts to retrain as an illustrator have been hampered by her injuries which have necessitated that she take a semester off from college course work. Plaintiff has also been unable to resume hobbies she previously enjoyed including horse-riding, participating in horse shows and gardening, and requires assistance with housework, cleaning and managing her personal finances. According to Plaintiff, as a result of her injuries she suffers from nausea and vomiting if she attempts to drive, dry heaves, fatigue, dizziness, lowered endurance and drop attacks, *i.e.*, sudden loss of consciousness and falling to the ground. Plaintiff testified that she experienced headaches accompanied by blurred vision, photophobia, nausea and vomiting.

Plaintiff further testified that her injuries have caused certain psychological symptoms including a significant change in her personality and mood. Specifically, before the accident, Plaintiff was generally a cheerful, sociable, friendly, hard-working, goal-oriented person and maintained

---

1. The Complaint also named as Defendants, Robert Rea, Grand River Transportation, Inc., and Musial Leasings, Inc, who were dis-

missed from the case by Order filed November 26, 1996.

an active lifestyle. However, since the accident, Plaintiff is sad, angry, irritable, easily frustrated, prone to cry without control, and has experienced episodes of suicidal ideation.

Plaintiff's psychological symptoms were corroborated by William Franks, M.D., F.R.C.P., who testified on Plaintiff's behalf as an expert in physical medicine and rehabilitation with a specialty in neurological rehabilitation of patients with acquired brain damage. Dr. Franks explained that the whipping action of Plaintiff's head during the accident, combined with the impact of Plaintiff's head with her truck's rear windshield, caused a minor brain injury which was further manifested by Plaintiff's disturbed sense of smell, cognitive deficits such as word finding difficulties, speech disturbances such as stuttering and slurring, and disturbances in executive functions such as organization and goal-directed behavior. Plaintiff's headaches and drop attacks were attributed to a minor brain injury, vascular instability, which Dr. Franks anticipated would continue. Dr. Franks also testified to Plaintiff's chronic pain and sleep disturbances. According to Dr. Franks, Plaintiff, as a result of physical injuries caused by the accident, is in a fragile emotional state and her continuing physical problems have been exacerbated by her psychological overlay.

With regard to Plaintiff's pain, Dr. Franks testified that part of the cause was inflammation of the cervical nerve endings involving the surrounding tissues and muscles. Dr. Franks did not recommend Plaintiff undergo surgery as it was his opinion that surgical intervention itself could be painful and devastating and could aggravate Plaintiff's injuries. Further, Dr. Franks opined that Plaintiff's cervical spine was permanently damaged, whether Plaintiff's pain would ever abate was difficult to predict and that while Plaintiff's symptoms may improve with treatment, the underlying condition would never be alleviated.

Defendant's expert witness, Dr. Richard Cowan, a board certified neurologist, testified that Plaintiff suffered from cervical and lumbar sprain as a result of the accident and had no neurological abnormalities. According to Dr. Cowan, Plaintiff's headaches were not related to the accident but, rather, were caused by Plaintiff's dependency on analgesics. Dr. Cowan was, however, unable to explain on cross-examination why Plaintiff's headaches continued after she ceased taking analgesics. Although Dr. Cowan testified as to Plaintiff's disturbed sense of smell, he did not testify as to her cognitive deficits as he performed no cognitive tests on Plaintiff. Plaintiff's claimed "drop attacks" were not addressed by Dr. Cowan.

Testimony was also presented that although the relatively minor impact of the accident caused only slight damage to both vehicles involved, the extent of such damage will not necessarily directly correlate to the severity of any resulting injuries suffered by the vehicles' occupants.

Following the conclusion of the trial on November 6, 1998, the jury was instructed that under New York law it could award damages for emotional distress separately from damages for pain and suffering. In addition to past and future damages for loss of wages and medical expenses, the jury verdict sheet also provided for past and future damages to be awarded separately for pain and suffering as well as for emotional distress. On November 6, 1998, the jury found in favor of Plaintiff and awarded her $18,500 for past medical expenses, $160,000 in backpay, $250,000 for past pain and suffering, $250,000 for past emotional distress, $20,000 for future medical expenses, $160,000 for future lost wages, $100,000 for future pain and suffering, and $100,000 for future emotional distress, for a total award of $1,058,500.

On November 12, 1998, judgment in the amount of $1,058,500 was entered for Plaintiff against Defendant. That judgment was vacated on November 18, 1998 to permit the parties to recalculate the

amount of the jury award as required by New York Civil Practice Law and Rules § 7511 (McKinney 1998). Defendant's time in which to file post-trial motions was to run from the date of the court order pertaining to the re-calculated jury award. On January 28, 1999, judgment in the amount of $931,218 plus interest was entered for Plaintiff against Defendant.

Thereafter, on January 29, 1999, Defendant filed the instant motion for a new trial or, alternatively, to strike the jury award for past and future emotional distress, reduce the awards for past pain and suffering to $100,000, for future pain and suffering to $50,000, for future lost earnings to $50,000 (after collateral offset), and to enter judgment in the amount of $304,-730. Defendant also sought a stay of execution of the judgment pursuant to Fed. R.Civ.P. 62(b) pending resolution of the motion for a new trial.[2] Defendant's motion was accompanied by a supporting affidavit and a memorandum of law.

On March 5, 1999, Plaintiff filed an affidavit and memorandum of law in opposition to Defendant's motion. Thereafter, on March 19, 1999, Defendant filed an affidavit and memorandum of law in reply. Oral argument was deemed unnecessary.

For the reasons as set forth below, Defendant's motion for a new trial or, alternatively, for *remittitur,* is DENIED.

### *DISCUSSION*

#### 1. *Request for a New Trial*

Defendant has moved pursuant to Fed. R.Civ.P. 59 for a new trial on the basis that it was unfairly prejudiced by an error in the jury instructions and verdict sheet, and that the jury verdict was not supported by the weight of the evidence. In opposition, Plaintiff maintains that the jury award should be sustained.

**2.** As Plaintiff has to date made no attempt to execute the judgment, that request is now

Grounds for which a new trial may be ordered include "any of the reasons for which new trials have heretofore been granted for actions at law in the courts of the United States." Fed. R.Civ.P. 59(a). A trial court should grant a motion for a new trial when it is convinced that the jury has reached a seriously erroneous result, or that the verdict is a miscarriage of justice. *Atkins v. New York City,* 143 F.3d 100, 102 (2d Cir.1998) (citing *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 911 (2d Cir.1997)). *Piesco v. Koch,* 12 F.3d 332, 345 (2d Cir.1993). A trial judge's disagreement with the jury's verdict alone is not, however, a sufficient reason to grant a motion for a new trial. *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 691 (2d Cir.1983).

A new trial will be granted where it is clear that jury was not adequately instructed on issues essential to the case. *Hilord Chemical Corp. v. Ricoh Electronics, Inc.,* 875 F.2d 32, 37–38 (2d Cir.1989). Additionally, whether to grant "a motion for a new trial on the ground that the verdict was against the weight of the evidence is committed to the sound discretion of the trial judge." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir. 1992), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). Further, "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Metromedia Co., supra,* at 363 (*citing Tennant v. Peoria & P. Union Ry.,* 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520 (1944) (jury's credibility assessments are entitled to deference)).

#### a. *Jury Instructions and Verdict Sheet*

According to Defendant, the jury was erroneously instructed that it could separately award damages based on mental suffering and emotional distress as both

moot.

are subsumed under any award for pain and suffering. Defendant's Memorandum of Law in Support of Defendant's Post–Trial Motion for a New Trial Pursuant to Fed.R.Civ.P. 59, filed January 29, 1999 (Docket Item No. 57) ("Defendant's Memorandum of Law") at 2–3. Plaintiff maintains that the damages awarded for emotional distress are consistent with the trial testimony concerning the impact of Plaintiff's injuries on her life. Plaintiff's Memorandum of Law filed March 5, 1999 (Docket Item No. 61) ("Plaintiff's Memorandum of Law") at 14.

In support of its motion, Defendant relies on *McDougald v. Garber*, 73 N.Y.2d 246, 538 N.Y.S.2d 937, 536 N.E.2d 372 (1989) and its progeny. In *McDougald*, the New York Court of Appeals held that under New York law, jurors may not be instructed to award damages for pain and suffering separately from damages for loss of enjoyment of life. *McDougald, supra,* at 377. After acknowledging that "if the term 'suffering' is limited to the emotional response to the sensation of pain, then the emotional response caused by the limitations of life's activities may be considered qualitatively different," the court chose to follow the "traditional approach" under which suffering was broadly construed to "encompass the frustration and anguish caused by the inability to participate in activities that once brought pleasure." *McDougald, supra,* at 376. Under the traditional approach, loss of enjoyment of life is thus treated as one factor in assessing pain and suffering. *Id.* Further, the court held that a trial court's erroneous instructions that damages may be awarded for loss of enjoyment of life in addition to pain and suffering warrants a new trial. *Id.* at 377.

Other cases relied on by Defendant are consistent with *McDougald. See Nussbaum v. Gibstein*, 73 N.Y.2d 912, 539 N.Y.S.2d 289, 536 N.E.2d 618 (1989) ("loss of enjoyment of life is not a separate element of damages deserving a distinct award but is, instead, only a factor to be considered by the jury in assessing damages for conscious pain and suffering."); *Collins v. McGinley*, 158 A.D.2d 151, 558 N.Y.S.2d 979 (3d Dep't.1990) (holding trial court erred by instructing jury to consider damages for pain and suffering independent of loss of enjoyment of life); *Viscomi v. S.S. Kresge Co.*, 159 A.D.2d 979, 552 N.Y.S.2d 761 (4th Dep't.1990) (vacating separate award for loss of enjoyment of life and requiring new trial on damages). Several New York courts have also recognized that separate awards for mental suffering should not be permitted as mental suffering, like loss of enjoyment of life, is but an element of pain and suffering. *Eaton v. Comprehensive Care America, Inc.*, 233 A.D.2d 875, 649 N.Y.S.2d 293 (4th Dep't.1996); *Colezetti v. Pircio*, 214 A.D.2d 926, 625 N.Y.S.2d 726 (3d Dep't.1995); *Pallotta v. West Bend Co.*, 166 A.D.2d 637, 561 N.Y.S.2d 66 (2d Dep't.1990); and *Lamot v. Gondek*, 163 A.D.2d 678, 558 N.Y.S.2d 284 (3d Dep't.1990).

■ Defendant has, however, confused the concept of loss of enjoyment of life which, as discussed above, is considered in New York an element of pain and suffering with a separate injury for emotional harm. Although loss of enjoyment of life and mental suffering or anguish "based on a plaintiff's inability to engage in certain activities," *McDougald, supra,* at 375, are considered elements of pain and suffering for purposes of damage awards under New York law, a separate recovery is permitted for emotional harm or distress.

In *Johnson v. State*, 37 N.Y.2d 378, 372 N.Y.S.2d 638, 334 N.E.2d 590 (1975), a plaintiff was permitted to recover for emotional harm sustained when the defendant, a state hospital, incorrectly reported that plaintiff's mother, a hospital patient, had died. The Court of Appeals held that "recovery for emotional harm to one subjected directly to the tortious act may not be disallowed so long as the evidence is sufficient to show causation and substantiality of the harm suffered, together with a 'guarantee of genuineness.'" *Johnson,*

*supra,* at 593. Considerations as to the genuineness of the plaintiff's claimed emotional harm were objective manifestations including an inability to return to her employment for eleven days after the incident, recurrent nightmares, difficulty in concentration, irritability, inability to properly function at work, general tenseness, anxiety and depression. *Johnson, supra,* at 591.

*McDougald, supra,* did not eliminate separate recoveries for emotional harm proximately caused by a defendant's negligence under New York law. For example, in *Ferrara v. Bernstein,* 81 N.Y.2d 895, 597 N.Y.S.2d 636, 613 N.E.2d 542 (1993), decided after *McDougald,* the plaintiff sued a doctor and health care facility for physical and emotional injuries based on an unsuccessful abortion which resulted in her suffering a miscarriage. As a result of the experience, the plaintiff claimed that in addition to the pain emanating from the miscarriage, she also suffered from post-traumatic depression, nightmares and sleeplessness, that she became withdrawn and was reluctant to resume intimate relations with men. *Ferrara,* at 543. The Court of Appeals held that separate damages could be awarded for pain and suffering, based on physical injury, and for emotional distress, based on emotional injury, where both the physical and emotional injuries arose out of the same negligent act. *Ferrara, supra,* at 544.

Similarly, in *Greco v. Saldanha,* 258 A.D.2d 950, 685 N.Y.S.2d 525, 526 (4th Dep't.1999), recovery was permitted for both physical and mental injuries, including emotional distress, suffered by a plaintiff as a consequence of a defendant's breach of duty. In *Greco,* a plaintiff whose sterile condition resulted from injuries sustained as a consequence of a defendant's medical malpractice recovered damages for both physical injuries inflicted as well as mental and emotional distress which accompanied those injuries.

Nor is recovery for both physical injuries and emotional harm, under New York law, limited to the cases involving reproductive health. In *Papa v. City of New York,* 194 A.D.2d 527, 598 N.Y.S.2d 558 (2d Dep't.1993), the plaintiff sued to recover damages for personal injuries resulting from assault and battery, negligence and civil rights violations predicated on a false arrest. The court affirmed an award for damages in which separate amounts were awarded for pain and suffering and for emotional distress, stating that a general verdict would stand provided each theory of liability presented to the jury was supported by adequate proof. *Papa, supra,* at 562. The court also found that the trial court's use of a verdict sheet which provided for a "meticulous breakdown of traditional damages" was not erroneous. *Id.*

█ In the instant case, Plaintiff testified in detail to her changed emotional state as a result of the accident, specifically, that before the accident, she was a cheery, family-oriented, sociable, friendly individual who was active, hard-working and goal-oriented. Since the accident, however, Plaintiff has been sad, angry, irritable, is easily frustrated, prone to crying spells and has experienced episodes of suicidal ideation which changes in Plaintiff's emotional health were found to be caused by Defendant's negligence. Testimony by Dr. William Franks confirmed that Plaintiff's emotional state was fragile as a result of the accident and that such psychological overlay delayed Plaintiff's physical recovery. It is significant that Defendant challenged the extent of the physical injuries Plaintiff claimed, but did not similarly dispute the emotional injuries claimed.

Defendant points out that in opposition to Defendant's argument that the jury was erroneously instructed that damages for emotional distress could be awarded separately as for pain and suffering, Plaintiff states "if the jury had been properly instructed to include emotional distress in its awards for past and future pain and suffering, the awards would undoubtedly have been significantly larger." Defendant's

Reply Memorandum of Law filed March 19, 1999 (Docket Item No. 64) ("Defendant's Reply Memorandum of Law") at 3 n. 1 (citing Plaintiff's Memorandum of Law at 14). Defendant maintains that by this statement, Plaintiff concedes that the challenged instructions are erroneous. Defendant's Reply Memorandum of Law at 3 n. 1.

In light of the fact that the proposed jury instructions Plaintiff submitted prior to trial include a separate instruction for emotional distress, Plaintiff's Request to Charge, attached to Plaintiff's Pretrial Statement filed October 23, 1998 (Docket Item No. 50) at 8, the court does not construe Plaintiff's statement "if the jury had been properly instructed" as a concession. Instead, the court interprets the statement as commenting that Plaintiff's proposed instructions were not adopted verbatim, or an assumption, *arguendo,* that Defendant is correct. Alternatively, Plaintiff, like Defendant, has in the instant motion confused her claim for emotional distress with one for loss of enjoyment of life. As explained in *McDougald,* mental anguish resulting form the plaintiff's inability to engage in certain life activities are not separately compensable apart from pain and suffering. However, Plaintiff made no such claim here. Accordingly, the court does not find that Plaintiff's use of the word "properly" as conceding that the jury instructions at issue are erroneous.

On this record, the court did not err in instructing the jury that, under New York law, damages could be awarded based on Plaintiff's pain and suffering and her emotional distress caused by Defendant's negligence. There is no basis for a new trial on this ground.

**b. *Weight of the Evidence***

Defendant also seek a new trial on the ground that the damages awarded are not supported by the weight of the evidence. Defendant's Memorandum of Law at 6. Plaintiff maintains that Defendant's position ignores the severity of Plaintiff's injuries, as found by the jury, and that the damages awarded do not materially deviate from verdicts rendered in comparable cases. Plaintiff's Memorandum of Law at 5.

The proper standard for determining whether to grant a new trial pursuant to Fed.R.Civ.P. 59 on the ground that the jury award is not supported by the weight of the evidence is provided by New York Civil Practice Law & Rules § 5501 (" § 5501"). *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 425, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (holding review of reasonableness of damages awarded by jury in diversity action is determined according to state law standard). Under § 5501, "an award is excessive or inadequate if it deviates materially from what would be reasonable compensation." N.Y. Civ. Prac. L. & R. § 5501(c) (McKinney 1995). The amount of damages to be awarded in a personal injury action is primarily a question of fact and considerable deference should be accorded to the jury's interpretation of the evidence. *Levine v. East Ramapo Cent. School Dist.,* 192 A.D.2d 1025, 597 N.Y.S.2d 239, 240 (3d Dep't.1993). In particular, the assignment of money damages to nonpecuniary injuries is an inherently subjective determination and peculiarly within the province of the jury. *In re Brooklyn Navy Yard Asbestos Litigation,* 971 F.2d 831, 853–54 (2d Cir.1992) (citing *Zimmerman v. New York City Health & Hosps. Corp.,* 91 A.D.2d 290, 458 N.Y.S.2d 552, 555–56 (1st Dep't. 1983)). The jury's interpretation of the evidence is to be accorded deference even if credible evidence existing in the record supports a contrary conclusion. *Simone v. Crans,* 891 F.Supp. 112, 112–13 (S.D.N.Y. 1994) (citing cases).

According to Defendant, Plaintiff has erroneously relied on several federal cases in support of her argument that the jury award does not materially deviate from what is reasonable compensation. Defendant's Reply Memorandum of Law at 14.

Although Plaintiff refers to several federal cases, a careful reading of those cases indicates that in each of them the court compared damages awarded under New York law to damages awarded by New York state courts. *See Gardner v. Federated Department Stores,* 907 F.2d 1348 (2d Cir.1990); *Lavery v. Meteor Messenger Service, Inc.,* 1996 WL 11213 (S.D.N.Y. 1996); *Taylor v. National Railroad Passenger Corp.,* 868 F.Supp. 479, 484 (E.D.N.Y.1994); *Schramm v. Long Island R. Co.,* 857 F.Supp. 255 (E.D.N.Y.1994); and *Iannacone v. SPS Technologies, Inc.,* 1992 WL 96350 (S.D.N.Y.1992). As the standard provided for under § 5501 was applied in each of those cases, the court fails to see how reliance on them results in misapplication of the appropriate standard of review.

■ Plaintiff presented extensive testimony regarding the severity and permanency of her injuries including testimony by Plaintiff's treating chiropractor and two expert physicians who testified that as a result of the accident Plaintiff sustained severe injuries to her spinal column as well as a minor brain injury. X-rays and an MRI confirmed Plaintiff's physical injuries which caused significant pain, dizziness, drop attacks, nausea, headaches and fatigue and prevented her from resuming many of her normal daily activities including her job as a pediatric nurse and basic household chores, in addition to her hobbies. Such testimony and evidence was largely consistent with and corroborated Plaintiff's own testimony. As discussed, Plaintiff testified that as a result of her brain injury, she is emotionally fragile as is manifested by irritability, sadness, anger, frustration, episodes of suicidal ideation and periods of uncontrollable crying.

Notwithstanding the extensive evidence presented by Plaintiff at trial, Defendant strongly disputes the severity and permanency of Plaintiff's injuries. With regard to the damages awarded Plaintiff for past pain and suffering, Defendant refers to several cases in which such damages awarded by juries were struck as excessive, including two cases in which $100,000 was indicated as an appropriate award for past pain and suffering over a period of five or more years. *Armbruster v. Buffalo China, Inc.,* 247 A.D.2d 880, 668 N.Y.S.2d 802 (4th Dep't.1998); *Sharrow v. Dick Corp.,* 204 A.D.2d 966, 612 N.Y.S.2d 537 (4th Dep't.1997). In *Armbruster,* the court held that the $35,000 awarded for past pain and suffering to a plaintiff who sustained back injuries deviated materially from what would be reasonable compensation as such amount was too low and that a new trial on damages would be awarded unless the defendant stipulated to an increased award of $100,000. *Armbruster, supra,* at 803. Similarly, in *Sharrow,* the court held that unspecified damages awarded to plaintiff for back injuries were inadequate and a new trial would be ordered unless defendant stipulated to increase the verdict to $100,000 for past pain and suffering and to $50,000 for future pain and suffering. *Sharrow, supra,* at 538–39.

In contrast, Plaintiff cites several cases in which jury verdicts for past pain and suffering over a period of less than five years in excess of $100,000 were approved. *See, e.g., Gardner v. Federated Department Stores, supra* (damages for past pain and suffering experienced by department store patron who was falsely imprisoned and battered by store security personnel was not excessive under New York law, inasmuch as patron suffered from ear aches, lockjaw, temporomandibular joint syndrome and atypical anxiety disorder); *Sluzar v. Nationwide Mutual Ins. Co.,* 223 A.D.2d 785, 636 N.Y.S.2d 171 (3d Dep't. 1996) (upholding awards of $250,000 for past pain and suffering and $250,000 for future pain and suffering as not excessive for bicyclist's injuries caused by collision with defendant where bicyclist, who was 40–years old at time of accident, sustained substantial and painful injuries to hand and back, was unable to resume swimming, bicycling, running, and hiking, and experi-

enced reduced ability to perform household activities such as cooking, cleaning, and gardening); and *Sevilla v. State,* 111 A.D.2d 1046, 490 N.Y.S.2d 351 (3d Dep't. 1985) (reducing to $750,000 from $1.2 million for past pain and suffering incurred over five year period based on severe permanent painful injuries which required hospitalization for 2½ months, including brain damage which caused plaintiff to become more dependent upon her husband, although she had since made a reasonably good recovery).

As discussed, *Armbruster* and *Sharrow* concerned damage awards determined as inadequate rather than excessive. Although in both cases the court found $100,000 as an appropriate award for past pain and suffering, that the court also ordered new trials unless defendants stipulated to the increased awards does not indicate that the court necessarily considered larger awards excessive.

Defendant also points to the fact that in *Armbruster* and *Sharrow,* plaintiffs were considered prospects for future surgery warrants a new trial on damages as no medical doctor has recommended surgical treatment for any of Plaintiff's injuries. The court observes, however, that nothing in either of those cases indicates that the need for surgery demonstrates the plaintiffs were as or more severely injured than Ms. Rounds. In fact, two of the cases cited by Plaintiff approved awards for past pain and suffering substantially larger than $100,000 despite the fact that the injuries complained of did not require surgery. *See Schramm v. Long Island R.R. Co.,* 857 F.Supp. 255, 256 (E.D.N.Y.1994) (upholding $182,000 awarded to plaintiff who suffered a concussion which caused him to miss five months of work although he was not hospitalized and required no surgery); *Mangiafridda v. Mahyedin,* 248 A.D.2d 200, 669 N.Y.S.2d 819 (1st Dep't.

1998) (increasing from $60,000 to $200,000 award to plaintiff who suffered ankle fracture and two herniated discs which caused severe pain but required no surgery). Of course, not all severe injuries will be amenable to surgery and, even if surgery were recommended, there is no guarantee the surgery would successfully treat such injuries. Nor did Defendant offer expert testimony on this issue.

The cases relied on by Defendant in support of its argument that the jury verdict for future pain and suffering is excessive are inapposite. In *Hulsen v. Morrison,* 206 A.D.2d 459, 614 N.Y.S.2d 561 (2d Dep't.1994), the court reduced a combined award for past and future pain and suffering from $175,000 to $75,000 on the basis that the jury award materially deviated from what was reasonable compensation. Several criteria necessary to draw any correlation between that case and the instant case are absent including what portion of the award was for past as opposed to future pain and suffering, the age of the plaintiff, and his life expectancy. Further, in *Wendell v. Supermarkets General Corporation,* 189 A.D.2d 1063, 592 N.Y.S.2d 895 (3d Dep't.1993), the court increased a jury verdict for future pain and suffering awarded to a 54 year old woman with a life expectancy of 25 years, from $15,000 to $100,000.[3]

Plaintiff refers to other cases in which damages for future pain and suffering larger than those awarded here, $100,000 over a life expectancy of 34.6 years ($2,890 per year) were approved for similar injuries. *See, e.g., Osiecki v. Olympic Regional Development Authority,* 682 N.Y.S.2d 312 (3d Dep't.1998) (reducing one future pain and suffering award to $243,000 from $495,000 based on life expectancy of 40.5 years, with regard to plaintiff who suffered back injuries which included two herniated

---

**3.** The court fails to see the relevancy of court determined injury values permissible under New York law in light of a diversity Plaintiff's constitutional right to a jury trial in federal court and the absence of *additur* under federal law. *Liriano v. Hobart Corporation,* 170 F.3d 264, 272–73 (1999) (citing *Dimick v. Schiedt,* 293 U.S. 474, 486–87, 55 S.Ct. 296, 79 L.Ed. 603 (1935)).

discs and limited types of jobs plaintiff could perform, and reducing another such award to $145,000 from $306,000 based on life expectancy of 38.7 years, as to plaintiff who sustained neck and back injuries and TMJ dysfunction which limited his ability to engage in recreational activities previously enjoyed); *Alkinburgh v. Glessing*, 240 A.D.2d 904, 658 N.Y.S.2d 735, 737 (3d Dep't.1997) (upholding $300,000 awarded for future pain and suffering to 16–year old boy whose sustained brain injury which impaired his executive functioning skills, including thinking, planning, organizing and computing and left him unable to manage his own affairs); and *Taylor v. National Railroad Passenger Corporation*, 868 F.Supp. 479, 481 (E.D.N.Y.1994) (reducing to $175,000 from $275,000 award to elderly woman with life expectancy of 12.5 years ($14,583 per year) for back injuries sustained in escalator accident including three disc herniations, one bulging disc and straightening of her normal spinal curvature).

■■■ Defendant also maintains the fact that Plaintiff sought treatment from Dr. Pownall, a chiropractor, rather than a medical doctor indicates that the evidence submitted with regard to such injury is insufficient to substantiate any recovery based on a brain injury.[4] Defendant's Reply Memorandum of Law at 7–9. However, testimony by Dr. Franks, a medical doctor, corroborated Pownall's finding that Plaintiff sustained a minor brain injury. The fact that Plaintiff did not seek additional treatment from a medical doctor or her brain injury in not inconsistent with Dr. Franks's opinion that such injury existed and was likely permanent. Moreover, Plaintiff's failure to follow a recommendation regarding a course of manage-

ment for the brain injury does not require a finding that the verdict is not supported by the evidence as the jury's interpretation of the evidence is accorded deference even in the face of evidence to the contrary. *Simone, supra,* at 112–13.

■■■ Defendant also argues that the $200,000 awarded for future loss of earnings is excessive as it punishes Defendant for Plaintiff's failure to pursue further treatment for her injuries with a medical doctor, relying instead on chiropractic manipulations and adjustments. Defendant's Memorandum of Law at 11–12. According to Defendant, following a more conservative and traditional course of treatment would have enabled Plaintiff to return to work and otherwise mitigate her damages. *Id.* Such argument is speculative as no trial testimony indicated any specific medical treatment would definitely have resulted in a more complete recovery than Plaintiff experienced.

The wide range of damages approved by courts for personal injury actions brought pursuant to New York law is consistent with precedent that such damages are largely subjective, warranting deference to the jury decision. *In re Brooklyn Navy Yard Asbestos Litigation, supra,* at 853–54; *Simone, supra,* at 112–13. In the instant case, the damages to be awarded hinged largely on the credibility of the witnesses including the experts. The jurors had the opportunity to view and assess the credibility of the witnesses and there is no indication that they were not attentive throughout the trial. On this record there was sufficient evidence to support the jury's award determination

---

4. Defendant also asserts that New York Education Law § 6551(a) (McKinney 1985), permits chiropractors to treat only for nerve interference resulting from or relating to distortion, malignment or sublaxation of the vertebral column and, as such, the court must find that Dr. Pownall exceeded the scope of her chiropractic license insofar as she treated Plaintiff for other claimed injuries and symptoms, including the brain injury. Defendant's Reply Memorandum of Law at 8–9. Defendant did not, however, object to Dr. Pownall's testimony on this basis at trial and has thus waived its right to do so now. Fed.R.Evid. 103(a)(1) (subsequent challenge to trial testimony is waived absent a timely and specific objection on the record).

and a new trial is not warranted on this ground.

## 2. *Alternative Motion for Remittitur*

Defendant moves, as an alternative to a new trial, for *remittitur* should Plaintiff agree to reduce the damages awarded as follows: (1) $100,000 for past pain and suffering, (2) $50,000 for future pain and suffering, and (3) $50,000 for future loss of earnings (after collateral source offset). Defendant's Memorandum of Law at 13. According to Defendant, these reduced amounts are fair and reasonable compensation as supported by the trial evidence. *Id.* In opposition to Defendant's motion for *remittitur,* Plaintiff maintains that the trial testimony supports the amount of damages awarded, and such damages do not materially deviate from what would be considered reasonable in light of damages awarded in similar cases. Plaintiff's Memorandum of Law at 3–4.

The court has found there is no need for a new trial as neither the jury instructions nor the verdict sheet were erroneous, and that the damages awarded are supported by the evidence. Accordingly, Defendant's alternative motion for *remittitur* in lieu of a new trial is DENIED.

## CONCLUSION

Based on the foregoing, Defendant's motion (Docket Item No. 56) for a new trial or, alternatively, for *remittitur,* is DENIED.

SO ORDERED.