Molina v Goldberg (2024 NY Slip Op 03818)

Molina v Goldberg

2024 NY Slip Op 03818

Decided on July 17, 2024

Appellate Division, Second Department

Maltese, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 17, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
JOSEPH J. MALTESE
WILLIAM G. FORD
LAURENCE L. LOVE, JJ.

2019-11046
 (Index No. 61298/13)

[*1]Antonio Molina IV, etc., respondent, 
v
Randy A. Goldberg, et al., defendants, Westchester Health Care Corporation, et al., appellants.

APPEAL by the defendants Westchester Health Care Corporation and Westchester Medical Center, in an action, inter alia, to recover damages for medical malpractice and wrongful death, from a judgment of the Supreme Court (Lawrence H. Ecker, J.), entered September 10, 2019, in Westchester County. The judgment, insofar as appealed from, upon a jury verdict, and upon an order of the same court dated June 5, 2018, among other things, denying those branches of the motion of the defendants Westchester Health Care Corporation and Westchester Medical Center which were pursuant to CPLR 4404(a) to set aside so much of the jury verdict as was in favor of the plaintiff and against them and for judgment as a matter of law dismissing the complaint insofar as asserted against them or, in the alternative, to set aside that portion of the jury verdict as contrary to the weight of the evidence and for a new trial, is in favor of the plaintiff and against them in the total sum of $3,872,163.58.

Vigorito, Barker, Patterson, Nichols & Porter, LLP, Valhalla, NY (Leilani Rodriguez of counsel), for appellants.
Silberstein, Awad & Miklos, P.C., Garden City, NY (Robert A. Miklos and Kenneth M. Tuccillo of counsel), for respondent.

MALTESE, J.

OPINION & ORDER
This appeal presents, as an issue of first impression in this Court, the issue of whether the plaintiff was properly awarded damages for the decedent's "pre-impact terror," delineated on the verdict sheet as emotional pain and suffering. We conclude that the award of damages for pre-impact terror is inappropriate in this medical malpractice and wrongful death action and that this award was duplicative of the award of damages for pain and suffering and loss of enjoyment of life and should be set aside and vacated.
On January 4, 2008, the plaintiff's decedent came into the care of the defendants Westchester Health Care Corporation and Westchester Medical Center (hereinafter together the WMC defendants) with complaints of, inter alia, coughing up blood, shortness of breath, and mild burning in his chest. During the late evening hours of January 6, 2008, into the early morning hours of January 7, 2008, the decedent suffered a heart attack while he was in the WMC defendants' care. When a cardiac catheterization was performed in the afternoon on January 7, 2008, doctors found, among other things, that one of the vessels in the decedent's heart was completely obstructed, and the insertion of a stent was unsuccessful. Thereafter, the decedent returned to different hospitals multiple times over the next three years for treatment for his congestive heart failure, which included the placement of a left ventricular assist device (hereinafter LVAD) in June 2011 at Yale-New Haven Hospital in Connecticut. The decedent developed complications from the LVAD and died on [*2]October 27, 2011, at Yale-New Haven Hospital.
In July 2013, the plaintiff commenced this action, among other things, to recover damages for medical malpractice and wrongful death against, among others, the WMC defendants. The plaintiff alleged, inter alia, that the WMC defendants' internal medicine residents and cardiology fellow departed from good and accepted standards of medical practice by failing to timely diagnose and treat the decedent's heart attack. After a trial, the jury returned a verdict in favor of the plaintiff and against, among others, the WMC defendants on the issue of liability. The jury awarded damages to the plaintiff, among other things, for "[e]motional pain and suffering [the decedent] endured between the moment [he] believed that he was going to die and the moment [he] died," characterized by the plaintiff as pre-impact terror, in the sum of $1,000,000 and (as a separate item of damages) for the decedent's "[p]ain and suffering and loss of enjoyment of life . . . from the moment of the heart attack to the moment of death" for an additional sum of $1,000,000. Thereafter, the WMC defendants moved, inter alia, pursuant to CPLR 4404(a) to set aside so much of the jury verdict as was in favor of the plaintiff and against them and for judgment as a matter of law dismissing the complaint insofar as asserted against them or, in the alternative, to set aside that portion of the jury verdict as contrary to the weight of the evidence and for a new trial. The Supreme Court denied those branches of the WMC defendants' motion and entered a judgment, among other things, in favor of the plaintiff and against the WMC defendants in the total sum of $3,872,163.58. The WMC defendants appeal from the judgment.
Legal Sufficiency and Weight of the Evidence
"A motion pursuant to CPLR 4404(a) to set aside a jury verdict and for judgment as a matter of law will be granted where there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [persons] to the conclusion reached by the jury on the basis of the evidence presented at trial" (Velasquez v Ruiz, 203 AD3d 786, 788 [internal quotation marks omitted]; see Gaspard v Aronoff, 153 AD3d 795, 796).
"In order to establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries" (Stukas v Streiter, 83 AD3d 18, 23; see Pezulich v Grecco, 206 AD3d 827, 828).
"Where hospital staff, such as resident physicians and nurses, have participated in the treatment of the patient, the hospital may not be held vicariously liable for resulting injuries where the hospital employees merely carried out the private attending physician's orders, except when the hospital staff follows orders knowing that the doctor's orders are so clearly contraindicated by normal practice that ordinary prudence requires inquiry into the correctness of the orders, the hospital's employees have committed independent acts of negligence, or the words or conduct of the hospital give rise to the appearance and belief that the physician possesses the authority to act on behalf of the hospital" (Bhuiyan v Germain, 211 AD3d 667, 670 [internal quotation marks omitted]; see Pezulich v Grecco, 206 AD3d at 829).
"Establishing proximate cause in medical malpractice cases requires a plaintiff to present sufficient medical evidence from which a reasonable person might conclude that it was more probable than not that the defendant's departure was a substantial factor in causing the plaintiff's injury" (Grullon v Thoracic Surgical, P.C., 208 AD3d 1163, 1164 [internal quotation marks omitted]; see Velasquez v Ruiz, 203 AD3d at 788). "A plaintiff's evidence of proximate cause may be found legally sufficient . . . as long as evidence is presented from which the jury may infer that the defendant's conduct diminished the plaintiff's chance of a better outcome or increased [the] injury" (Velasquez v Ruiz, 203 AD3d at 788 [internal quotation marks omitted]; see Goldberg v Horowitz, 73 AD3d 691, 694).
Here, the plaintiff's evidence at trial was legally sufficient to establish that the WMC defendants' internal medicine residents and cardiology fellow departed from good and accepted [*3]standards of medical practice by committing independent acts of negligence that were not at the direction of the attending physicians and that the departures were a proximate cause of the decedent's injuries. The plaintiff presented sufficient evidence from which a reasonable person could conclude that it was more probable than not that the departures of the WMC defendants' internal medicine residents and cardiology fellow were a substantial factor in causing the decedent's injuries. The jury could reasonably infer that the failure of the WMC defendants' internal medicine residents, among other things, to report a correct interpretation of the decedent's electrocardiogram to the attending physician, order repeated electrocardiogram and cardiac enzyme testing for the decedent in response to his complaints of chest pain and numbness in his extremity, and ensure that the decedent received a timely cardiology consultation, and the failure of the WMC defendants' cardiology fellow to call an attending physician to request an emergency cardiac catheterization and transfer the decedent to the intensive care unit earlier, diminished the decedent's chance of a better outcome and increased his injuries.
Further, the jury verdict against the WMC defendants was not contrary to the weight of the evidence. "A jury verdict in favor of [the successful party] should not be set aside as contrary to the weight of the evidence unless the evidence preponderates so heavily in the [opposing party's] favor that the verdict could not have been reached on any fair interpretation of the evidence" (Berlich v Maimonides Med. Ctr., 208 AD3d 1148, 1149 [internal quotation marks omitted]; see Lolik v Big V Supermarkets, 86 NY2d 744, 746). "It is for the jury to make determinations as to the credibility of the witnesses, and deference in this regard is accorded to the jury, which had the opportunity to see and hear the witnesses" (Rucigay v Wyckoff Hgts. Med. Ctr., 194 AD3d 865, 868 [internal quotation marks omitted]; see Ditoro v Richmond Univ. Med. Ctr., 202 AD3d 912, 913). "[W]here conflicting expert testimony is presented, the jury is entitled to accept one expert's opinion and reject that of another expert" (Grullon v Thoracic Surgical, P.C., 208 AD3d at 1165 [internal quotation marks omitted]; see Abbene v Conetta, 198 AD3d 849, 850). Here, the jury's findings that the WMC defendants' internal medicine residents and cardiology fellow departed from good and accepted medical practice by committing independent acts of negligence that were not at the direction of the attending physicians and that the departures were a substantial factor in causing injury to the decedent were based upon a fair interpretation of the evidence and, thus, were not contrary to the weight of the evidence.
Evidentiary Rulings
"[T]rial courts are accorded wide discretion in making evidentiary rulings and those rulings should not be disturbed on appeal absent an improvident exercise of discretion" (Dyszkiewicz v City of New York, 218 AD3d 546, 550 [internal quotation marks omitted]; see Chihuahua v Birchwood Estates, LLC, 203 AD3d 1015, 1018). Here, the Supreme Court providently exercised its discretion in precluding evidence of the decedent's past drug use, criminal history, and prior bad acts, since any marginal relevance of such evidence was outweighed by its prejudicial effect (see Mazella v Beals, 27 NY3d 694, 710-711).
Damages Awarded to the Younger Son
The WMC defendants' contention that the decedent's younger son, who was born before the decedent's death, could not be awarded wrongful death damages is without merit (see EPTL 4-1.1[c]; 5-4.1[1]; 5-4.4[a]; Seaton v County of Suffolk, 78 AD3d 1158, 1159).
Pre-Impact Terror Damages
The WMC defendants contend that the Supreme Court erred in instructing the jury that it should consider damages both for "[e]motional pain and suffering [the decedent] endured between the moment [he] believed that he was going to die and the moment [he] died," which the plaintiff characterizes as "pre-impact terror," and for the decedent's "[p]ain and suffering and loss of enjoyment of life . . . from the moment of the heart attack to the moment of death," with these damages delineated as separate items on the verdict sheet. This case presents a matter of first impression in this Court. As an initial matter, contrary to the plaintiff's contention, the WMC defendants' contentions are preserved for appellate review.
Here, pre-impact terror delineated as "[e]motional pain and suffering" should not have been considered as a separate category of damages from "[p]ain and suffering and loss of enjoyment of life" (see McDougald v Garber, 73 NY2d 246). "'Damages for pre-impact terror are designed to compensate the decedent's estate for the fear the decedent experienced during the interval between the moment the decedent appreciated the danger resulting in the decedent's death and the moment the decedent sustained a physical injury as a result of the danger'" (Matter of 91st [*4]St. Crane Collapse Litig., 154 AD3d 139, 153, quoting NY PJI 2:320, Comment, Caveat 3; see Vargas v Crown Container Co., Inc., 155 AD3d 989; McKenna v Reale, 137 AD3d 1533). PJI 2:320 distinguishes the damages chronologically, by describing "emotional pain and suffering" as that which the decedent actually endured between the moment he or she realized that he or she was going to be gravely injured or die and the moment the decedent sustained a physical injury, and describing pain and suffering as that which the decedent experienced during the subsequent time period from the moment of injury to the moment of death. In contrast, the damages awards here overlapped chronologically. "Emotional pain and suffering" covered the time period between "the moment [the decedent] believed that he was going to die and the moment [he] died," and "[p]ain and suffering and loss of enjoyment of life" covered the time period from "the moment of the heart attack to the moment of death." Thus, they were duplicative (see McDougald v Garber, 73 NY2d 246).
The suffering that results from serious illness can include fear and anxiety that death may be likely or imminent, and that fear of death can affect an individual's ability to enjoy life. Therefore, fear of death may be considered as a "permissible factor" when assessing the pain and suffering and loss of enjoyment of life resulting from medical malpractice (id. at 257; see Mancuso v Kaleida Health, 172 AD3d 1931, affd 34 NY3d 1020).
However, pre-impact terror delineated as emotional pain and suffering as a separate item of damages is inappropriate in this medical malpractice and wrongful death action and would represent an inappropriate extension of the law with respect to this issue. Traditionally, damages for pre-impact terror have been awarded in cases involving motor vehicle accidents and other types of accidents (see e.g. Vargas v Crown Container Co., Inc., 155 AD3d 989; Matter of 91st St. Crane Collapse Litig., 154 AD3d 139; McKenna v Reale, 137 AD3d 1533). Here, where the "impact" was the decedent's heart attack, the damages for emotional pain and suffering cannot accurately be characterized as damages for pre-impact terror, because they were intended to compensate for the fear the decedent experienced after the heart attack occurred in January 2008 at Westchester Medical Center until his death more than three years later on October 27, 2011, at Yale-New Haven Hospital. Further, unlike a motor vehicle accident where the defendant driver causes the impact, the WMC defendants did not cause the decedent's heart attack. To the extent that the Appellate Division, First Department, determined otherwise in Small v City of New York (213 AD3d 475), we decline to follow that decision.
Accordingly, the judgment is modified, on the law, by deleting the provision thereof in favor of the plaintiff and against the WMC defendants awarding the plaintiff damages in the sum of $1,000,000 for emotional pain and suffering; as so modified, the judgment is affirmed insofar as appealed from, that branch of the WMC defendants' motion which was pursuant to CPLR 4404(a) to set aside so much of the jury verdict as was in favor of the plaintiff and against them awarding the plaintiff damages for emotional pain and suffering is granted, the order dated June 5, 2018, is modified accordingly, and the matter is remitted to the Supreme Court, Westchester County, for the entry of an appropriate amended judgment as reduced in accordance herewith.
CONNOLLY, J.P., FORD and LOVE, JJ., concur.
ORDERED that the judgment is modified, on the law, by deleting the provision thereof in favor of the plaintiff and against the defendants Westchester Health Care Corporation and Westchester Medical Center awarding the plaintiff damages in the sum of $1,000,000 for emotional pain and suffering; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, that branch of those defendants' motion which was pursuant to CPLR 4404(a) to set aside so much of the jury verdict as was in favor of the plaintiff and against them awarding the plaintiff damages for emotional pain and suffering is granted, the order dated June 5, 2018, is modified accordingly, and the matter is remitted to the Supreme Court, Westchester County, for the entry of an appropriate amended judgment as reduced in accordance herewith.
ENTER:
Darrell M. Joseph
Clerk of the Court